UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SPEARMAN CORPORATION MARYSVILLE DIVISION and SPEARMAN CORPORATION KENT DIVISION,<br><br>　　　Plaintiffs,<br><br>v.<br><br>THE BOEING COMPANY,<br><br>　　　Defendant. | Case No. C20-13RSM<br><br>ORDER GRANTING IN PART BOEING'S MOTION FOR SUMMARY JUDGMENT |

## I.　INTRODUCTION

This case comes before the Court on Defendant Boeing's Motion for Summary Judgment. Dkt #137. Plaintiffs Spearman Corporation and Spearman Corporation Kent Division ("Spearman") oppose. Dkt. #166. The Court has determined that it can rule without oral argument. For the following reasons, the Court GRANTS IN PART Boeing's Motion, dismisses certain claims as stated below, and DENIES partial summary judgment on a counterclaim for unpaid invoices.

## II.　BACKGROUND

Spearman and Boeing had a business relationship that soured. The briefing takes many pages to present the various ways this happened, often going above and beyond what is

ORDER GRANTING IN PART MOTION FOR SUMMARY JUDGMENT - 1

necessary for the Court, including some facts that serve no apparent purpose other than to embarrass the opposing party. The Court will focus on the claims and those facts necessary to rule on the instant Motion.

This is a contract dispute. Defendant Boeing is a commercial and defense aerospace manufacturer. From 1988 through 2002, Alex Spearman worked closely with Boeing in an executive role for a parts manufacturing company called QPM Aerospace. In 2013, he formed Spearman Corporation here in Western Washington and began obtaining the necessary certifications and approvals to supply aircraft parts to Boeing. During the relevant time period, Spearman had Marysville and Kent divisions that separately contracted with Boeing.[1]

Boeing uses a standard set of contracts with its suppliers. According to Boeing procurement agent James Sand, these include:

- Initial Emergent Offload ("EO") agreements, which allow Boeing to purchase small quantities of parts for a short period of time. Dkt. #141 ("Sand Decl."), ¶ 7. New suppliers often start out with these.

- Larger framework agreements, which in the case of Spearman consisted of a General Terms Agreement ("GTA") and a Special Business Provisions agreement ("SBP"). *Id.* at ¶ 6. The GTA and SBP are the typical contracts used by the Parts and Assemblies group for supply relationships that are anticipated to be longer term, typically three to five years, but sometimes shorter or longer. *Id.* GTA and SBP agreements signed by the parties have been submitted into the record. *See* Sand Decl., Ex. 1 and Ex. 2.

---

[1] The distinction between Spearman Corporation, Spearman Marysville, and Spearman Kent is blurred by the parties. *See, e.g.,* Spearman's Response Brief, Dkt. #166 at 2 ("Boeing awarded $50 million in 5-year requirements contracts to a startup local machine shop, Spearman Corporation and Spearman Corporation Kent Division ('Spearman Kent') (collectively 'Spearman').").

ORDER GRANTING IN PART MOTION FOR SUMMARY JUDGMENT - 2

- Requests for Quotation ("RFQ"s), which indicate that any work awarded from a bid submitted by a supplier will be subject to the GTA and SBP with the supplier. *Id*. at ¶ 8. Sometimes bids from suppliers will contain proposed changes to the GTA or SBP. *Id.*

- Award letters, which are issued after a successful supplier's bid. These letters set forth the terms of a formal contractual offer for the purchase of particular parts, at a particular price, and subject to a Reorder Lead Time ("ROLT"), which reflects the duration of time within which a supplier must deliver parts after receiving a purchase order from Boeing. *Id.* at ¶ 9. If the Award Letter is accepted (signed by the supplier), then the terms of that award letter are incorporated into the SBP between the supplier and Boeing and that award will become part of the supplier's statement of work ("SOW") for Boeing. *Id.*

- Purchase Orders ("PO"s) are issued later and govern Boeing's actual commitment to purchase a specific number of parts. *Id.* An award letter typically does not commit to the purchase of a specific number of parts but as many as may be required during a period of time. *Id.*

Spearman Marysville and Boeing signed an EO Agreement in October 2014. Dkt. #139-1 ("Sp. 30(b)(6) Dep."), 18:10-24. In August of 2016 Boeing ordered 24 "rib post" parts. *Id.* at 177:10-178:25; Sand Decl., Ex. 3. In the fall of 2015 Boeing gave Spearman Marysville an opportunity to respond to several RFQs, including (1) the "737 MAX" package, and (2) something called the "Rib Post" package. During that process, Boeing shared "pro forma" copies of the GTA and SBP that would govern the supplier relationship if either package was awarded. Sp. 30(b)(6) Dep. at 19:22-21:21; *see also* Sand Decl., Ex. 5.

ORDER GRANTING IN PART MOTION FOR SUMMARY JUDGMENT - 3

In January 2016, Boeing awarded the 737 MAX package to Spearman Marysville. Shortly thereafter, Spearman Marysville received execution versions of the GTA and SBP. The parties signed the agreements on February 2, 2016. *See* Sand. Decl. Ex. 1 at 39; Sand. Decl. Ex. 2 at 58. The GTA and SBP applied generally to all future work between the signing parties. Based on Spearman's submissions and representations as to its finances and capabilities, Boeing made 16 additional awards to Spearman Marysville after the 737 MAX package. Sand Decl. at ¶ 11. Despite the original EO order, Boeing did not award Spearman the Rib Post package. Dkt. #143 ("Kulezsa Decl."), ¶¶ 5-6 & Ex. 1. Spearman Kent was added as a party to the SBP at the end of October 2017; before that time, it acted as a sub-tier supplier to Spearman Marysville. Sand Decl. ¶ 11.

The relationship eventually soured, leading to the termination of these contracts and the underlying allegations of Plaintiffs' claims. Records of chat messages between Boeing employees produced in discovery clearly indicate some degree of animosity between the parties. *See* Dkt. #166 at 4–5 (citing Dkt. #176-2 (filed under seal)). At times these chat messages are unprofessional. In any event, Boeing argues that Spearman repeatedly failed to make deliveries on time. Spearman admits that at least some of its deliveries were late, and that it was responsible for certain late deliveries. *See* Sp. 30(b)(6) Dep. at 228:11-21, 230:24-234:7. Boeing had to find other sources for these parts.

In September 2017, Spearman informed Boeing of its intent to close the Marysville facility and consolidate all manufacturing work in Kent. Dkt. #142 ("Orvold Decl."), ¶ 20. The consolidation plan was discussed throughout fall 2017. *Id*. Following a site visit, Ms. Orvold, a Boeing Procurement Agent, sent an email attaching a presentation from the previous day's visit to Spearman personnel. *Id*. at ¶ 22 & Ex. 17. The email recipients included several high-level

ORDER GRANTING IN PART MOTION FOR SUMMARY JUDGMENT - 4

individuals at Spearman, as well as Boeing's primary contacts at Spearman—the Contract Administrator and Quality Manager. *Id.* Apparently, these last two individuals were not aware of the consolidation plan. The email in question includes a long list of bullet points discussing several facets of the business relationship between Boeing and Spearman under the applicable contracts. *See id.*

Boeing issued a principal default letter for Spearman's delivery delays in August 2017 and in the fall of 2017 cancelled portions of Spearman's statement of work. *See* Dkt. #142 ("Orvold Decl."), ¶¶ 12, 19 & Ex. 8. Boeing issued a final Notice of Cancellation in June of 2018. Sand Decl. at ¶ 29 & Ex. 18.

Boeing cites to the following provisions of the governing GTA and SBP agreements, Sand Decl., Ex. 1 and Ex. 2:

- Default cancellation (GTA §§ 4.1, 13.1(B), 13.2). Events of default include failure to deliver parts on time (absent excusable delay) or to pay debts as due. Boeing may cancel all or any portion of any order or the entire GTA or SBP for any event of default.

- Termination for convenience (GTA § 12). Boeing may terminate an order at any time, subject to the supplier's right to recover appropriate compensation through a settlement claims process.

- Reporting provisions (GTA § 4.1; SBP §§ 14.1, 14.5, 35.2). A supplier must provide Boeing with status reports and financial information and promptly notify Boeing of problems that could impact timely delivery (with an accompanying recovery plan).

- Reservation of rights notwithstanding forbearance (GTA § 29). Boeing can delay or forgo remedies without waiving them. For instance, Boeing may give a supplier an

ORDER GRANTING IN PART MOTION FOR SUMMARY JUDGMENT - 5

opportunity to cure its prior contractual breaches without waiving the right to cancel the parties' contracts as a result of those breaches.

This action was filed by Spearman on December 23, 2019, in King County Superior Court, Dkt. #1-1, and removed to this Court on January 3, 2020, Dkt. #1. Plaintiffs' Amended Complaint seeks a declaratory judgment that the GTA and SBP contracts fail of their essential purpose and are unconscionable. Plaintiff also brings causes of action for breach of contract, breach of the duty of good faith and fair dealing, and violation of the Washington Consumer Protection Act ("CPA"). Dkt. #47. The Court dismissed Plaintiffs' CPA claim on January 14, 2021. Dkt. #63.

Boeing now moves to dismiss Spearman's remaining claims and for a ruling that Spearman breached its contractual obligations. Dkt. #137. Boeing also seeks summary judgment on a counterclaim to recover for unpaid invoices totaling $379,687.40. *See* Dkt. #70, Dkt. #137 at 25 (citing Sand Decl. ¶ 31 & Ex. 24; SBP § 27.1; GTA § 13.2 (E)). Boeing asks the Court to reserve for trial the amount of damages otherwise owed on its breach of contract counterclaim.

### III.   DISCUSSION

A. **Legal Standard for Summary Judgment**

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Material facts are those which might affect the outcome of the suit under governing law. *Anderson*, 477 U.S. at 248. In ruling on summary judgment, a court does not weigh evidence to determine the truth of the matter, but "only determine[s] whether there is a genuine issue for trial." *Crane v. Conoco,*

*Inc.*, 41 F.3d 547, 549 (9th Cir. 1994) (citing *Federal Deposit Ins. Corp. v. O'Melveny & Meyers*, 969 F.2d 744, 747 (9th Cir. 1992)).

On a motion for summary judgment, the court views the evidence and draws inferences in the light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255; *Sullivan v. U.S. Dep't of the Navy*, 365 F.3d 827, 832 (9th Cir. 2004).  The Court must draw all reasonable inferences in favor of the non-moving party. *See O'Melveny & Meyers*, 969 F.2d at 747, *rev'd on other grounds*, 512 U.S. 79 (1994).  However, the nonmoving party must make a "sufficient showing on an essential element of her case with respect to which she has the burden of proof" to survive summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

**B. Procedural and Substantive Unconscionability**

Spearman seeks a declaratory judgment finding the GTA and SBA unconscionable.

Under Washington law, unconscionability is a question of law for the Court to decide. *Nelson v. McGoldrick*, 127 Wn.2d 124, 131, 896 P.2d 1258 (1995).  It is analyzed in terms of "procedural" unconscionability and "substantive" unconscionability. *Id*.  The plaintiff bears the burden to prove unconscionability. *See Hoober v. Movement Mortg.*, LLC, 382 F. Supp. 3d 1148, 1155 (W.D. Wash. 2019).

To determine procedural unconscionability, the Court looks to the circumstances of contract formation, including: "(1) the manner in which the parties entered into the contract, (2) whether the parties had a reasonable opportunity to understand the terms of the contract, and (3) whether the important terms were hidden in a maze of fine print." *Am. Nursery Prod., Inc. v. Indian Wells Orchards*, 115 Wn.2d 217, 222, 797 P.2d 477 (1990).  Spearman points to the following comment to the UCC: "The basic test is whether, in the light of the general commercial background and the commercial needs of the particular trade or case, the clauses

ORDER GRANTING IN PART MOTION FOR SUMMARY JUDGMENT - 7

involved are so one-sided as to be unconscionable under the circumstances existing at the time of the making of the contract." Dkt. #166 at 8 (citing RCW § 62A.2-302 cmt. 1).

Spearman does not discuss the manner in which the parties entered into the contract or whether it had a reasonable opportunity to understand the terms. Instead, Spearman argues it had no meaningful choice to negotiate the terms because this was a take-it-or-leave-it contract between a small supplier and a giant of the industry. Dkt. #166 at 8–9. Lack of bargaining power alone is typically insufficient to show procedural unconscionability. *UT SEE Zuver v. Airtouch Commc'ns, Inc.*, 153 Wn.2d 293, 306, 103 P.3d 753, 761 (2004). The undisputed record clearly shows that Spearman and its CEO were no strangers to this industry, to Boeing, or even to this kind of contract. Spearman has failed to present any evidence to suggest it did not have a reasonable opportunity to understand the terms of the contracts. There is no genuine dispute of fact related to this claim and Spearman has failed to prove procedural unconscionability as a matter of law.

"Substantive unconscionability involves those cases where a clause or term in the contract is alleged to be onesided or overly harsh." *Nelson*, 127 Wn.2d at 131. "'Shocking to the conscience,' 'monstrously harsh,' and 'exceedingly calloused' are terms sometimes used to define substantive unconscionability." *Nelson*, 127 Wn.2d at 131 (quoting *Montgomery Ward & Co. v. Annuity Bd. of S. Baptist Convention*, 16 Wn. App. 439, 444, 556 P.2d 552 (1976)).

Spearman spends one or two sentences arguing these contracts are substantively unconscionable. Dkt. #166 at 9. This level of argument is simply insufficient to satisfy the above test. While it is true that the contracts at issue give Boeing almost all the power in the relationship, they also offer a process for suppliers to correct mistakes or to appeal decisions. The Court declines to find them substantively unconscionable as a matter of law on these facts.

ORDER GRANTING IN PART MOTION FOR SUMMARY JUDGMENT - 8

Spearman also alleges the contracts fail of their essential purpose, arguing that Boeing does not comply with its termination claims process "as a matter of policy or practice." FAC ¶ 132(e). Spearman goes on to say that the claims settlement process following termination for convenience fails of its essential purpose because Boeing requires suppliers to sign a settlement form as a prerequisite to payment, and reserves the right to pay amounts below those set out in the Federal Acquisition Regulations ("FARs"). *Id*. ¶¶ 133-36. This claim is not argued in Spearman's Response brief. Spearman has failed to present the Court with information about the application of these contracts with other suppliers and therefore declines to issue a declaratory judgment as to Boeing's policies or practices in general. The Court agrees with Boeing that the facts alleged as to Spearman, even if true, do not rise to the level required to show the contract failing for its essential purpose. *See* Dkt. #137 at 13–14.

### C. Breach of Contract Claim

#### 1. Contract Claim for "Rib Post" Package

The statute of frauds states that contracts for the sale of goods are not enforceable absent a signed writing between the parties. RCW 62A.2-201(1); *Alaska Indep. Fishermen's Mktg. Ass'n v. New England Fish Co.*, 548 P.2d 348, 351-52 (Wash. Ct. App. 1976).

Boeing argues it did not award the so-called Rib Post package to Spearman, as alleged in the Amended Complaint. Dkt. #137 at 14 (citing Kulesza Decl. ¶¶ 3-6 & Ex. 1; Gellert Decl., Ex. 5 (Frankland Decl.) ¶¶ 11, 15). Spearman concedes that the parties never entered a written contract for this package. *See* Sp. 30(b)(6) Dep. at 122:8-123:6, 132:22-133:5, 206:22-207:2. Instead, Spearman points to emails. Many of these emails reflect a "temporary offload" or "emergent offload" rather than the award of a package under Boeing's unique and at times confusing contract system with suppliers. Other emails presented by Spearman are internal to

ORDER GRANTING IN PART MOTION FOR SUMMARY JUDGMENT - 9

Boeing, *i.e.* they were not sent to Spearman. The Court finds that Spearman has failed to present evidence indicating a final agreement to be bound, communicated between the parties. Accordingly, the Court finds there is no genuine dispute of material fact. This claim is properly dismissed on summary judgment.

### 2. Breach of Confidentiality

Spearman alleges that Boeing breached the GTA and/or a separate Proprietary Information Agreement ("PIA") by disclosing Spearman's future consolidation plans to two Spearman employees, *i.e.* revealing that they and their colleagues were about to lose their jobs. Boeing argues the record cannot support a breach of confidentiality claim "both because the consolidation plan was not protected from disclosure by the GTA or the PIA, and because Boeing did not disclose the plan to any outside party." Dkt. #137 at 19.

The GTA requires Boeing to "keep confidential and protect from disclosure all . . . confidential, proprietary, and/or trade secret information . . . (collectively referred to as 'Proprietary Information and Materials')." Sand Decl., Ex. 1, GTA § 20.0. The next sentence states "Boeing and [Spearman] shall each use Proprietary Information and Materials of the other only in the performance of and for the purpose of this Agreement and/or any Order." *Id.* Boeing and "Spearman Corporation" also entered into a Proprietary Information Agreement ("PIA"), which says "each Party agrees that it will preserve in confidence, not disclose to others, and not use… any and all Proprietary Information received from the other Party [with certain limitations.]" Dkt. #141-1 at 202. Boeing is permitted to use such information "for the purpose of purchase, and/or manufacture of commercial airplane parts." *Id.*

ORDER GRANTING IN PART MOTION FOR SUMMARY JUDGMENT - 10

Spearman claims it warned Boeing that its Marysville employees were unaware of the consolidation plans, and argues that such information was confidential. Dkt. #166 at 15 (citing Schoeggl Decl. ¶ 4; Ex. B [Sp. 30(b)(6) Dep. at 698]).

Spearman may have been damaged by the disclosure, but it has failed to convince the Court that what happened here could constitute a breach of the GTA or the PIA. There is no material dispute as to the nature of the communication. This was not a broadcast to the Spearman workforce or even an email sent to the wrong person by mistake—this was a communication from a Boeing employee to her contacts at Spearman about the performance under the contract. The disclosure was therefore covered by the purpose and performance exceptions in GTA § 20 and PIA § 2 & (A). Furthermore, the Court agrees with Boeing's argument that this was not a disclosure to "others" as contemplated under these agreements. This claim is properly dismissed as a matter of law.

### 3. Cancellation of Further Contracts

Spearman contends Boeing breached their contracts by cancelling orders without material justification. Boeing argues that the late delivery of parts constitutes an event of default under the GTA, and that the record demonstrates numerous delivery failures. While there appears to be a genuine dispute as to who to blame for many delivery failures, there are at least some delivery delays for which Spearman admits responsibility. *See, e.g.*, Dkt. #139-1 (Foster Decl., Ex. 1) at 228:11-21, 230:24-234:7 (conceding responsibility for 115W family, 146T and 116W); Dkt. #166 at 10 ("…only 28 of the deliveries were actually late and in ways that are not Boeing's own responsibility"); Dkt. #170 (Dreikorn Decl.) ¶ 5. Spearman does not dispute that these delays harmed Boeing. These delays were not "slight" or "insubstantial," as

ORDER GRANTING IN PART MOTION FOR SUMMARY JUDGMENT - 11

argued in the Response brief.  *See* Dkt. #166 at 11 (citing *Colorado Structures, Inc. v. Ins. Co. of the W.*, 167 P.3d 1125, 1131 (Wash. 2007)).

Whether or not the contract terms are one-sided, the Court has found that they are not unconscionable, and, as the Court reads them, the terms above clearly permit Boeing to cancel based on at least the undisputed delivery failures and other undisputed facts.  Therefore, even if Spearman is right about all the other disputes between the parties, Boeing was permitted to cancel the orders and to terminate the business relationship.  This claim is properly dismissed.

### D.  Breach of Good Faith and Fair Dealing

Under Washington law, "[t]here is in every contract an implied duty of good faith and fair dealing" that "obligates the parties to cooperate with each other so that each may obtain the full benefit of performance."  *Rekhter v. Dep't of Soc. & Health Servs.*, 180 Wn.2d 102, 112, 323 P.3d 1036 (2014) (quoting *Badgett v. Sec. State Bank*, 116 Wn.2d 563, 569, 807 P.2d 356 (1991)). The implied covenant of good faith and fair dealing "cannot add or contradict express contract terms and does not impose a free-floating obligation of good faith on the parties."  *Id*. at 113.  Instead, "the duty arises only in connection with terms agreed to by the parties." *Id*. (citations omitted). The duty can arise "when the contract gives one party discretionary authority to determine a contract term." *Id*. (quoting *Goodyear Tire & Rubber Co. v. Whiteman Tire, Inc.*, 86 Wn. App. 732, 738, 935 P.2d 628 (1997)).

Boeing argues this claim fails because it did not violate any term of the Agreement. Dkt. #11 at 25-26.  However, under Washington law, the duty of good faith and fair dealing can arise even when there is no breach of an express contract term. *See id.* at 111-12 (citing to the Seventh Circuit for the proposition that "it is, of course, possible to breach the implied duty of good faith even while fulfilling all of the terms of the written contract"). The Washington

ORDER GRANTING IN PART MOTION FOR SUMMARY JUDGMENT - 12

Supreme Court noted in *Rekhter* that, if a violation of the contract's terms were required, "[s]uch a requirement would render the good faith and fair dealing doctrine superfluous." 180 Wn.2d at 112.

"There is no one-size-fits-all definition of good faith and fair dealing." *Microsoft Corp. v. Motorola, Inc.*, 963 F. Supp. 2d 1176, 1184 (W.D. Wash. 2013). "It may violate the duty of good faith and fair dealing to, for example, (1) evade the spirit of a bargain; (2) willfully render imperfect performance; (3) interfere with or fail to cooperate in the other party's performance; (4) abuse discretion granted under the contract; or (5) perform the contract without diligence." *Id*. (citing RESTATEMENT (SECOND) OF CONTACTS § 205 cmt. d).

Spearman cannot bring such a claim with regard to Boeing's non-approval of the plan to transfer its contracts from the Marysville division to the Kent division. The GTA expressly precludes the transfer of work to a new location unless Spearman "obtain[s] written approval from Boeing prior to moving work." GTA § 28.0. The GTA required Spearman to seek approval for the transfer but did not impose a duty on Boeing to grant it. Spearman cites in briefing to a Boeing employee saying the transfer required only "a simple contract change," Dkt. #166 at 18. Spearman fails to explain how this can be twisted into a breach of good faith and fair dealing claim; Boeing's alleged bad faith here cannot be attached a specific contractual term and the claim therefore fails.

On the other hand, viewing the evidence and drawing all reasonable inferences in the light most favorable to Spearman, there is a material dispute as to Boeing's breach of the duty of good faith and fair dealing in the way that it cancelled orders and contracts with Spearman for default. Spearman points to many aspects of its convoluted business dealings with Boeing, all governed by some contractual term. Boeing appears to repeatedly render imperfect

ORDER GRANTING IN PART MOTION FOR SUMMARY JUDGMENT - 13

performance, evade the spirit of the bargain, and interfere with Spearman's ability to perform. Whether any of this rises to a breach of the above duty, or can otherwise be justified by Boeing, are questions best left for the trier of fact.

Boeing argues "[w]here default or the election of post-default remedies is set forth in a contract, those terms cannot be modified through the implied duty of good faith and fair dealing." Dkt. #137 at 21 (citing *Fleetwood v. Stanley Steemer Int'l, Inc.*, 725 F. Supp. 2d 1258, 1274 (E.D. Wash. 2010)). This goes to damages and is more properly addressed in the next section.

### E. Spearman's Damages are limited under the GTA and UCC

Boeing argues that Spearman's damages are limited by language in the GTA. Specifically:

> Spearman seeks tens of millions of dollars of alleged lost profits and other consequential damages. But the GTA precludes the recovery of incidental or reliance damages, lost future profits, or other consequential damages for wrongful termination. Instead, Section 16.0 provides that any "wrongful cancellation shall be deemed a termination [for convenience] of all or a portion of an Order pursuant to GTA Section 12.1 and therefore, Boeing's liability shall be limited to … amounts identified in GTA Section 12.3." Section 12.3, in turn, provides that Spearman may submit a claim for compensation "to the extent allowed under the terms of [federal regulations] as published in 48 CFR § 52.249-2," subsections (d)-(g). Those provisions permit recovery only for work performed, plus a reasonable profit thereon, and costs incurred prior to termination. 48 CFR § 52.249-2(d)-(g).

Dkt. #137 at 22   Section 16 of the GTA not only applies to wrongful termination of an Order but also to "any cancellation under GTA Section 13.0," which refers to default of the GTA caused by, *e.g.*, "[a]ny failure by Seller to deliver Products of perform Services, in accordance with the schedule requirements set forth by this Agreement or any Order except [by excusable delay]."

ORDER GRANTING IN PART MOTION FOR SUMMARY JUDGMENT - 14

Spearman argues that such a limitation on recovery is prohibited under Washington law in circumstances of "bad faith breach," citing *Scott v. Cingular Wireless*, 160 Wn.2d 843, 854, 161 P.3d 1000, 1006 (2007). Dkt. #166 at 20–21. Boeing counters with citations to *Myers v. State*, 218 P.3d 241 (Wash. Ct. App. 2009) and *SAK & Assocs., Inc. v. Ferguson Const., Inc.*, 357 P.3d 671, 677 (Wash Ct. App. 2015), which are closer on the facts and come to the opposite conclusion. Boeing argues that "[c]ontractual provisions that convert a wrongful termination for default to a termination for convenience are common in the industry." Dkt. #137 at 22.

The Court agrees with Boeing and finds *Myers* and *SAK* analogous. Spearman's available recovery for the cancellation of the orders and contract is limited by the GTA to that allowed under 48 CFR § 52.249-2, subsections (d)-(g). This clause in the GTA was known to the parties at the outset, is permitted under Washington law in private contracts, and its application here does not constitute a violation of Boeing's duty of good faith and fair dealing. Having so found, the Court need not address Boeing's argument that the UCC also bars Spearman's claim or consequential damages.

### F. Dismissal of damages related to Makino and GROB machines

Almost as an afterthought, Boeing moves to dismiss claims for damages arising from Spearman's lease of a Makino five-axis milling machine and a GROB 5-axis milling machine. Dkt. #137 at 24–25. The Court agrees with Spearman that a genuine dispute of facts preclude summary judgment on this issue. *See* Dkt. #166 at 23–24.

### G. Counterclaim for Unpaid Invoices

Boeing seeks to recover for unpaid invoices totaling $379,687.40. *See* Dkt. #70, Dkt. #137 at 25 (citing Sand Decl. ¶ 31 & Ex. 24; SBP § 27.1; GTA § 13.2 (E)).

Spearman argues that there is a material dispute as to this total and that Boeing engaged in bad faith by refusing "to allow Spearman to return the materials after he had unknowingly purchased them." Dkt. #166 at 24–25.

The Court has reviewed the cited deposition testimony, finds that a material dispute remains as to the amount owed by Spearman under this claim, and that this precludes summary judgment. This claim is best left for the trier of fact.

### IV. CONCLUSION

Having reviewed the relevant briefing and the remainder of the record, the Court hereby finds and ORDERS that Boeing's Motion for Summary Judgment, Dkt #137, is GRANTED IN PART and DENIED IN PART as stated above. Plaintiff's first and second causes of action (declaratory judgment and breach of contract) are DISMISSED. Plaintiff's available damages for breach of good faith and fair dealing are limited as stated above. The Court declines to grant summary judgment on any of Boeing's counterclaims, finding that a genuine dispute of material facts precludes summary judgment and that Boeing's claims are best untangled by a trier of fact.

DATED this 18th day of July, 2022.

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE