1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SPEARMAN CORPORATION MARYSVILLE DIVISION and SPEARMAN CORPORATION KENT DIVISION,<br><br>        Plaintiff,<br><br>v.<br><br>THE BOEING COMPANY,<br><br>        Defendant. | Case No. C20-13RSM<br><br>ORDER DENYING MOTION TO EXCLUDE CERTAIN TESTIMONY OF BOEING PROPOSED EXPERT STEPHEN CARTER |

## I.    INTRODUCTION

This matter comes before the Court on Plaintiff Spearman Corporation Marysville Division and Spearman Corporation Kent Division ("Spearman")'s Motion to Exclude Certain Testimony of Boeing Proposed Expert Stephen Carter. Dkt. #129. Defendant Boeing opposes Plaintiff's Motion. Dkt. #147. The Court has determined that oral argument is unnecessary. For the following reasons, the Court DENIES Plaintiff's Motion to Exclude.

## II.    BACKGROUND

This is a contract dispute. Spearman, a manufacturing company that supplies aircraft parts, brings an action against Boeing, a commercial and defense aerospace manufacturer. Plaintiff's Amended Complaint seeks a declaratory judgment that the parties' contracts fail of

their essential purpose and are unconscionable.  Dkt. #47.   Plaintiff also brings causes of action for breach of contract, breach of the duty of good faith and fair dealing, and violation of the Washington Consumer Protection Act ("CPA").  *Id.*  Plaintiff alleges that Boeing cancelled $50 million of its agreements in bad faith and in violation of the parties' contracts.  Dkt. #129.  The Court dismissed Plaintiff's CPA claim on January 14, 2021.  Dkt. #63.   The Court also dismissed Plaintiff's declaratory judgment and breach of contract claims on July 18, 2022.  Dkt. #190.  Plaintiff's breach of good faith and fair dealing remains, though the Court has found that Plaintiff's damages under this claim are limited.  *Id.*

Defendant disclosed Stephen Carter on July 26, 2021, and produced his initial report on December 21, 2021 ("Carter Report").  *See* Dkt. #129.  Mr. Carter asserts he is an "expert aerospace professional with over 30 years of operational and supply chain experience."  *See* Dkt. #129-1 at 1.  Mr. Carter has a BS in Production and Operations Management and an MBA. *Id.* at 2. He has held various positions in the industry in program management, scheduling, production control and industrial engineering.  *Id.*  Mr. Carter also held leadership roles with responsibility for leading procurement of billions of materials and parts. *Id.*

In his report, Mr. Carter offers opinions about "industry standards" in aerospace supply contracts and manufacturer-supplier relations and will testify that Boeing acted reasonably in accordance with those standards.  Mr. Carter opines that industry standards allow manufacturers like Boeing flexibility in carrying out contracts, but hold suppliers like Spearman to much more stringent standards. Declaration of David M. Schoeggl Ex. A (Carter Report) at 5, 5, 41, 65. *Id.* at 2, 4. (*See e.g.*, "a supplier that has not generated significant goodwill through a sustained level of high-quality performance and integrity in its interactions with the manufacturer is less

ORDER DENYING MOTION TO EXCLUDE - 2

likely to receive and should not be heard to complain when it receives less forbearance or discretionary support").

Mr. Carter also supports Boeing's claims about Plaintiff's poor performance for on-time deliveries. *See* Carter Report at 65. Carter's report says that Boeing tracked supplier performance and considered a delivery performance below 90 percent a "red rating." *Id*. It also endorses Boeing's claims, showing Spearman's performance dropped to a red rating in the Spring and Summer of 2017. *Id.* Importantly, Boeing claimed these late deliveries justified termination of Plaintiff's contracts.

### III.    DISCUSSION

### A. Legal Standard

Federal Rule of Evidence 702 provides that a witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Under Rule 702, the trial court acts as a gatekeeper and ensures that the proffered scientific testimony meets certain standards of both relevance and reliability before it is admitted. *Daubert v. Merrell Dow Pharm., Inc. ("Daubert I")*, 509 U.S. 579, 590, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993). The party proffering expert testimony has the burden of showing the admissibility of the testimony by a preponderance of the evidence. *Daubert I*, 509 U.S. at 592 n.10. "[J]udges are entitled to broad discretion when discharging their gatekeeping function" related to the admission of expert testimony. *United States v. Hankey*, 203 F.3d 1160,

ORDER DENYING MOTION TO EXCLUDE - 3

1168 (9th Cir. 2000) (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150-53, 119 S. Ct. 1167, 143 L. Ed. 2d 238 (1999)).   The Court considers four factors to determine if expert testimony will assist the trier of fact: "(i) whether the expert is qualified; (ii) whether the subject matter of the testimony is proper for the jury's consideration; (iii) whether the testimony conforms to a generally accepted explanatory theory; and (iv) whether the probative value of the testimony outweighs its prejudicial effect."  *Scott v. Ross*, 140 F.3d 1275, 1285-86 (9th Cir. 1998).

As an initial matter, this Court must determine whether the proffered witness is qualified as an expert by "knowledge, skill, experience, training or education."   Fed. R. Evid. 702. Because the Rule "contemplates a *broad conception* of expert qualifications," only a "*minimal foundation* of knowledge, skill, and experience" is required.  *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1015-16 (9th Cir. 2004) (emphasis in original) (quoting *Thomas v. Newton Int'l Enters.*, 42 F.3d 1266, 1269 (9th Cir. 1994)).  A "lack of particularized expertise goes to the weight of [the] testimony, not its admissibility."  *United States v. Garcia*, 7 F.3d 885, 890 (9th Cir. 1993) (citing *United States v. Little*, 753 F.2d 1420, 1445 (9th Cir. 1984)); *Daubert v. Merrell Dow Pharm., Inc. ("Daubert II")*, 43 F.3d 1311, 1315 (9th Cir. 1995).

The trial court must also ensure that the proffered expert testimony is reliable. Generally, to satisfy Rule 702's reliability requirement, "the party presenting the expert must show that the expert's findings are based on sound science, and this will require some objective, independent validation of the expert's methodology."  *Daubert II*, 43 F.3d at 1316.  Toward this end, the Supreme Court in *Daubert I* set forth the following factors for the trial court to consider when assessing the reliability of proffered expert testimony: (1) whether the expert's method,

theory, or technique is generally accepted within the relevant scientific community; (2) whether the method, theory, or technique can be (and has been) tested; (3) whether the method, theory, or technique has been subjected to peer review and publication; and (4) the known or potential rate of error of the method, theory, or technique. *Daubert I,* 509 U.S. at 593-94. An expert opinion is reliable if it is based on proper methods and procedures rather than "subjective belief or unsupported speculation." *Id.* at 590. The test for reliability "'is not the correctness of the expert's conclusions but the soundness of his methodology.'" *Stilwell v. Smith & Nephew, Inc.*, 482 F.3d 1187, 1192 (9th Cir. 2007) (quoting *Daubert II*, 43 F.3d at 1318).

Alternative or opposing opinions or tests do not "preclude the admission of the expert's testimony – they go to the *weight*, not the admissibility." *Kennedy v. Collagen Corp.*, 161 F.3d 1226, 1231 (9th Cir. 1998). Furthermore, "'[d]isputes as to the strength of [an expert's] credentials, faults in his use of [a particular] methodology, or lack of textual authority for his opinion, go to the weight, not the admissibility, of his testimony.'" *Id.* (quoting *McCullock v. H.B. Fuller Co.*, 61 F.3d 1038, 1044 (2d Cir. 1995)).

Finally, the Court must ensure that the proffered expert testimony is relevant. As articulated in Rule 702, expert testimony is relevant if it assists the trier of fact in understanding evidence or in determining a fact in issue. *Daubert I*, 509 U.S. at 591. Thus, the party proffering such evidence must demonstrate a valid scientific connection, or "fit," between the evidence and an issue in the case. *Id.* Expert testimony is inadmissible if it concerns factual issues within the knowledge and experience of ordinary lay people because it would not assist the trier of fact in analyzing the evidence. In the Ninth Circuit, "[t]he general test regarding the admissibility of expert testimony is whether the jury can receive 'appreciable help' from such testimony." *United States v. Gwaltney*, 790 F.2d 1378, 1381 (9th Cir. 1986). Because

ORDER DENYING MOTION TO EXCLUDE - 5

unreliable and unfairly prejudicial expert witness testimony is not helpful to the trier of fact, the trial court should exclude such evidence. *Jinro Am., Inc. v. Secure Invs., Inc.*, 266 F.3d 993, 1004 (9th Cir. 2001). Likewise, expert testimony that merely tells the jury what result to reach is inadmissible. Fed. R. Evid. 704, Advisory Committee Note (1972); *see, e.g.*, *United States v. Duncan*, 42 F.3d 97, 101 (2d Cir. 1994) ("When an expert undertakes to tell the jury what result to reach, this does not *aid* the jury in making a decision, but rather attempts to substitute the expert's judgment for the jury's").

**B. Analysis**

Plaintiff seeks to exclude Mr. Carter's testimony regarding "industry standards," the accuracy of Boeing's performance management data, and reasonableness of Boeing's conduct, arguing that: (1) Carter's testimony on "industry standards" has no basis, and (2) the data on which he relied was flawed, rendering his testimony unreliable. *See* Dkt. #129 at 2-3.

**1. Qualification**

After reviewing the submitted materials, the Court finds Mr. Carter qualified to opine on industry standards in the aerospace manufacturing supply sector. Because Rule 702 contemplates a broad conception of expert qualifications, only a minimal foundation of knowledge, skill, and experience" is required. *Hangarter, supra.* The Court's review of the attached exhibits demonstrates Mr. Carter has the necessary foundation as to this issue.

**2. Reliability and Relevance**

**i. Carter's opinion about industry standards**

Plaintiff asserts that Mr. Carter's opinion on "industry standards" and Boeing's "reasonableness" should be excluded from evidence because they are *ipse dixit* and thus unreliable. *See* Dkt. #129 at 3. Pointing to the Carter Report and Carter's deposition

ORDER DENYING MOTION TO EXCLUDE - 6

admissions, Plaintiff claims that Mr. Carter's assertions of what constitutes "industry standard" have no verifiable objective support and are untethered from the parties' contracts or any other sources or data the jury can evaluate for reliability. *Id.* at 3-5. Plaintiff argues that such an approach does not satisfy the *Daubert* test. *Id.* at 4.

The Court disagrees. The reliability test under Rule 702 varies based on the type of testimony offered. As the Ninth Circuit has explained, "the *Daubert* factors (peer review, publication, potential error rate, etc.) simply are not applicable" to non-scientific testimony, like testimony about industry standards. *Hangarter,* 373 F.3d 998 at 1017.   Reliability of expert opinions about industry standards "depends heavily on the *knowledge and experience* of the expert, rather than the methodology or theory behind it." *Id.*; *see also* Fed. R. Evid. 702 (advisory committee's note to 2000 amendment ("[T]he text of Rule 702 expressly contemplates that an expert may be qualified on the basis of experience. In certain fields, experience is the predominant, if not sole, basis for a great deal of reliable expert testimony.")).

Considering the sum of his report and deposition testimony, Mr. Carter does not appear to be basing his opinion solely on subjective belief and Plaintiff's arguments will not serve as a basis to exclude his testimony.   Furthermore, any disputes as to the lack of Carter's textual authority for his opinions on industry standards go the weight, not the admissibility, of his testimony. *McCullock*, 61 F.3d at 1044. Plaintiff is more than free to attack Mr. Carter's opinion on cross-examination.

### ii.   Carter's opinion about Boeing's data

Plaintiff next argues that Carter's opinions "related to alleged late deliveries" were unreliable because Boeing's supplier performance management data was flawed and should also be excluded. *See* Dkt. #129 at 3.  Plaintiff reasons that Carter treated this data as 100% accurate

throughout his report even though he admits that there were "confirmed instances where Boeing was to blame for missing delivery deadlines." *Id.* at 8; *see* Dkt. #161 at 2.   Because Carter failed to apply any method to address the known errors in the data and relied on flawed data to provide his opinion on Boeing's reasonableness, Plaintiff argues that Carter's opinions related to such data should be excluded as unreliable under evidence Rule 702. *Id.* at 7.

Boeing argues that while some late deliveries were not attributable to Spearman, the delivery-performance data reflected adjustments for Boeing related delays. *See* Dkt. #147 at 9. Furthermore, Boeing asserts that Plaintiff did not substantiate their claims regarding incorrect data or provide any alternative data. *Id.*   Both parties refer to numerous deposition records to argue their points.

As an initial matter, although the Court acts as a gatekeeper here, it will not question whether the data was flawed. The parties' opposing opinions on this issue, including Carter's alleged faults in his methodology, is venturing too far into the factual weeds and will not serve as a basis to exclude opinion testimony. These go to the weight, not admissibility of the testimony. Plaintiff is again free to attack Mr. Carter's opinion on cross-examination or offer their own competing expert testimony.

Defendant further asserts that Carter's testimony will be helpful to the jurors, most or all of whom will have little or no familiarity with industry standards applicable to aerospace manufacturer-supplier relationships. *See* Dkt. #147 at 6. The Court agrees that Defendant has met its burden to demonstrate Carter's testimony is relevant.

## IV.    CONCLUSION

Given all of the above, the Court finds no basis to exclude Mr. Carter's testimony. Having reviewed the above Motions and the remainder of the record, the Court hereby finds and

ORDER DENYING MOTION TO EXCLUDE - 8

ORDERS that Plaintiff's Motion to Exclude Certain Testimony of Boeing Proposed Expert Stephen Carter, Dkt. #129, is DENIED.

DATED this 11th day of October 2022.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE

ORDER DENYING MOTION TO EXCLUDE - 9